Martin E. Rose (SBN: 62558)
Ben A. West [*Pro Hac Vice Forthcoming*]
FROST BROWN TODD, LLC
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone: (214) 545-3472
Facsimile: (214) 545-3473
Email: mrose@fbtlaw.com
Email: bwest@fbtlaw.com

Attorneys for Defendant
PROCARE PORTAL, LLC

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIBCO SOFTWARE INC., <br><br> Plaintiff, <br><br> vs. <br><br> PROCARE PORTAL, LLC, <br><br> Defendant. | Case No. 3:20-cv-03897-LB <br><br> **DEFENDANT PROCARE PORTAL, LLC'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** <br><br> Complaint Served: June 26, 2020 <br><br> Judge Laurel Beeler <br> Courtroom B |

Defendant PROCARE PORTAL, LLC ("ProCARE" or "Defendant") hereby answers the Complaint for Breach of Contract ("Complaint") of Plaintiff TIBCO SOFTWARE INC. ("TIBCO" or "Plaintiff") as follows:

1

# ANSWER

1.  On information and belief, ProCARE understands the allegations in Paragraph 1 of the Complaint to be true and therefore admits them.

2.  ProCARE admits that its principal place of business at 245 N. Highland Ave. NE, Suite 230-328, Atlanta, Georgia 30307. ProCARE denies that it is a Georgia corporation.

3.  On information and belief, ProCARE admits that there is diversity of the parties. ProCARE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3 and therefore denies them.

4.  On information and belief, ProCARE understands the allegations that the actions set forth in the Complaint took place in the Northern District of California and Plaintiff performed the contract in the Northern District of California. ProCARE further admits that this Court has specific personal jurisdiction over it in this matter.

5.  ProCARE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 and therefore denies them.

6.  ProCARE admits that it entered into the Master Terms Agreement (or "Master Agreement") as defined in the Complaint. ProCARE denies that the Master Agreement granted ProCARE a license to deploy TIBCO software products for a three-year period. ProCARE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 6 and therefore denies them.

7.  ProCARE admits that it executed and delivered the order form to TIBCO on March 2, 2017, that the order form incorporated the Master Agreement, and that the order form set forth the maximum number of units of the software type that ProCARE could use during the specified term. ProCARE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 7 and therefore denies them.

8.  ProCARE denies the allegations in Paragraph 8.

9.  ProCARE admits the allegations in Paragraph 9.

10. ProCARE admits the allegations in Paragraph 10.

11. ProCARE denies the allegations in Paragraph 11.

12. ProCARE admits the allegations in Paragraph 12.

13. ProCARE denies the allegations in Paragraph 13.

14. ProCARE denies the allegations in Paragraph 14.

15. ProCARE denies the allegations in Paragraph 15.

16. ProCARE denies the allegations in Paragraph 16.

17. ProCARE denies the allegations in Paragraph 17.

18. ProCARE denies the allegations in Paragraph 18.

19. ProCARE incorporates its responses to Paragraphs 1 through 18 as though fully set forth herein.

20. ProCARE denies the allegations in Paragraph 20.

21. ProCARE denies the allegations in Paragraph 21.

22. ProCARE denies the allegations in Paragraph 22.

23. ProCARE denies the allegations in Paragraph 23.

24. ProCARE denies the allegations in Paragraph 24.

25. ProCARE denies the allegations in Paragraph 25.

26. ProCARE denies the allegations in Paragraph 26.

27. Any allegation not expressly admitted is hereby denied.

## AFFIRMATIVE DEFENSES

28. Without admitting any of the facts alleged in the Complaint, ProCARE asserts and alleges the following separate and additional affirmative defenses. By setting forth these defenses, ProCARE does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.

**FIRST AFFIRMATIVE DEFENSE**

**(Laches)**

29. The claims asserted in the Complaint are barred, in whole or in part, by the doctrine of laches because plaintiff has inexcusably and unreasonably delayed in the filing of this action causing substantial prejudice to ProCARE.

## SECOND AFFIRMATIVE DEFENSE

### (Good Faith)

30. The claims asserted in the Complaint are barred, in whole or in part, because ProCARE at all times acted in good faith.

## THIRD AFFIRMATIVE DEFENSE

### (Performance Excused)

31. The claims asserted in the Complaint are barred, in whole or in part, because—to the extent that an enforceable agreement existed between ProCARE and TIBCO, if such agreement existed—ProCARE's performance under that agreement was excused by Plaintiff's own breach of the agreement.

## FOURTH AFFIRMATIVE DEFENSE

### (Substantial Performance)

32. The claims asserted in the Complaint are barred, in whole or in part, because—to the extent that an enforceable agreement existed between ProCARE and TIBCO, if such agreement existed—ProCARE substantially performed all its obligations under that agreement.

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

33. The claims asserted in the Complaint are barred, in whole or in part, by the doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

34. The claims asserted in the Complaint are barred, in whole or in part, by the doctrine of unclean hands, as Plaintiff is trying to benefit despite its own wrongdoing.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

35. The claims asserted in the Complaint are barred, in whole or in part, because Plaintiff would be unjustly enriched by the recovery of the damages it seeks.

### EIGHTH AFFIRMATIVE DEFENSE

### (Frustration of Purpose)

36. The claims asserted in the Complaint are barred, in whole or in part, because the parties' purpose for entering into any contract or agreement was frustrated by unexpected occurrences.

### NINTH AFFIRMATIVE DEFENSE

### (Fraudulent Inducement)

37. The claims asserted in the Complaint are barred, in whole or in part, because no contract was created between the parties, as ProCARE's consent, if any, was obtained by fraud.

### TENTH AFFIRMATIVE DEFENSE

### (Unilateral Mistake)

38. The claims asserted in the Complaint are barred, in whole or in part, because no contract was created between the parties, as (i) ProCARE was mistaken about the underlying facts and/or the terms of any alleged agreement, (ii) ProCARE's mistake was not caused by carelessness, (iii) Plaintiff knew of ProCARE's mistake and took advantage of that mistake, and (iv) ProCARE would not have entered into any alleged agreement or alleged contract but for the mistake.

### ELEVENTH AFFIRMATIVE DEFENSE

### (Privilege)

39. The claims asserted in the Complaint are barred, in whole or in part, because ProCARE, at all relevant times, was acting lawfully and consistent with community standards to protect its economic interests and maintained a good-faith belief that it had a legal right to engage in the relevant conduct.

### TWELFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

40. The claims asserted in the Complaint are barred, in whole or in part, because Plaintiff failed to mitigate its damages.

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Acts or Omissions of Plaintiff)

41. The claims asserted in the Complaint are barred, in whole or in part, because any damages resulted from the acts and/or omissions of Plaintiff.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (No Proximate Causation)

42. The damages alleged by Plaintiff, if any, were not proximately caused by any actionable conduct of ProCARE.

### FIFTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

43. The claims asserted in the Complaint are barred, in whole or in part, by the doctrines of release and/or waiver.

### SIXTEENTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

44. ProCARE reserves the right to rely upon other affirmative defenses that may become apparent during the course of litigation. ProCARE therefore does not waive any defenses and reserves the right to assert additional defenses.

### PROCARE'S COUNTERCLAIMS

45. ProCARE, by and through its undersigned counsel, files its counterclaims against TIBCO, and in support thereof alleges as follows:

### PARTIES

46. Counter-Plaintiff ProCARE Portal LLC ("ProCARE") is a limited liability company organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia.

47. On information and belief, Counter-Defendant TIBCO Software Inc. ("TIBCO") is a Delaware corporation, with its principal place of business at 3303 Hillview Avenue, Palo Alto, California 94304.

# JURISDICTION AND VENUE

48. This Court has subject-matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332(a) in that this is a civil action involving diverse parties and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

49. This Court has general personal jurisdiction over TIBCO because of its systematic and continuous contacts with California generally, and the Central District of California specifically. This Court also has specific personal jurisdiction over TIBCO because the dispute at issue arises out of TIBCO's conduct within California generally, and the Central District of California specifically.

50. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(1) and (2).

# STATEMENT OF FACTS

51. ProCARE is an enterprise healthcare provider compensation management software platform serving provider groups in both the public and private healthcare sectors. ProCARE provides these provider organizations with an easier, more efficient, and more accurate way to manage and process incentive compensation for physicians and practice providers.

52. In need of reporting and analytics features and functionality in its proprietary healthcare informatics platform, ProCARE determined that leveraging Jaspersoft/Jasper Reports—owned by TIBCO—was the best solution, based in part on the information ProCARE received from TIBCO, through its sales representative. A sales representative for TIBCO had contacted ProCARE directly after ProCARE signed up to attend a Jasper Reports webinar.

53. TIBCO provided ProCARE with (1) Jasper Reports, a reporting and analytics software package, and (2) professional services to integrate and customize Jasper Reports into ProCARE's proprietary platform according to ProCARE's requirements and specifications.

54. While negotiating, ProCARE advised TIBCO that the software products must be able to successfully integrate with ProCARE's existing systems, and that TIBCO must be

able to successfully implement that integration.

55. TIBCO assured ProCARE that its software products would be able to integrate with ProCARE's existing systems and that any necessary customization or coding to ensure the integration was successful was within TIBCO's knowledge, expertise, and ability. TIBCO further represented to ProCARE that the costs for integration were "baked into" the total cost of the software—something TIBCO refers to as the "Jasper UpShift Pack." Thus, ProCARE understood that the total cost covered both TIBCO's software products and the successful implementation and integration of those products with ProCARE's system.

56. ProCARE eventually reached an agreement with TIBCO to license certain TIBCO software products. That agreement was memorialized with the execution of TIBCO's Order Form (Exhibit B of the Complaint). ProCARE began making payments as required by the terms of the agreement.

57. Incorporated into the Order Form was a Master Terms Agreement.

58. As TIBCO began integrating its software products with ProCARE's platform, it quickly became evident that TIBCO's software products did not perform as promised. Not only were there issues with the out-of-the-box software download, but the customization and integration of TIBCO's products with ProCARE's existing systems was unworkable.

59. TIBCO attempted to customize and integrate its software products with ProCARE's systems, but ultimately failed to do so. ProCARE made it clear that the requirement that TIBCO's software produced functioning reports was critical and must be completed by June 2017. But TIBCO's attempts to get its software products customized and integrated, which began in April 2017, were still unsuccessful as of September 2017.

60. After TIBCO attempted for months to integrate its software products, it became clear that TIBCO had mislead ProCARE as to its abilities and functionality and that TIBCO's products were designed and intended for use with systems that differed significantly from those operated by ProCARE.

61. ProCare identified to TIBCO that its software, contrary to the promises made in

8

**DEFENDANT'S ORIGINAL ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**               CASE NO. 3:20-CV-03897-LB

TIBCO's sales pitch, was severely lacking. Simple items required excessive amounts of custom code and still did not operate as desired. This included, but was not limited to: lack of quality and control over PDF output, the inability to link reports to detail outputs and cascading data, lack of drill-down functionality, inability to set dynamic data formatting, issues with grid sizing and screen responsiveness, loss of the control panel to make changes, and excessive need for custom embedded coding.

62. Simply put, at no time—including during the applicable warranty period—did TIBCO's software products perform as promised, and ProCARE made this clear.

63. Finally, ProCARE advised TIBCO that, due to TIBCO's inability to provide the services it promised, TIBCO's failure to meet its obligations under their agreement, and TIBCO's wholly failed implementation as required under the parties' agreement, ProCARE ceased making payments.

64. As a result of TIBCO's failure, ProCARE was forced to develop its own software workaround solution, at significant time and expense. Further, ProCARE's go-to-market timelines, critical deadlines, and overall development strategy were severely impacted. ProCARE suffered additional damages in the amount that it paid to TIBCO and in the time and expense working to counteract TIBCO's failures.

## COUNT ONE – BREACH OF CONTRACT

65. ProCARE incorporates by reference the allegations contained in the previous paragraphs.

66. ProCARE and TIBCO entered into a contract wherein ProCARE would license TIBCO's software products for integration, implementation, and use with ProCARE's existing systems. Under this agreement, TIBCO would furnish both the software products and the expertise and coding required to implement and integrate its software products with ProCARE's systems—all for the total cost quoted.

67. ProCARE performed as required under that contract, until TIBCO's failure to perform excused ProCARE from any further performance.

68. TIBCO breached its obligations under the contract, as it failed to deliver, implement, and integrate its software products with ProCARE's system as promised.

69. As a result of TIBCO's failure to perform, ProCARE suffered damages, including legal fees and expenses. ProCARE is therefore entitled to recovery of its damages and all costs permissible by law.

### COUNT TWO – BREACH OF EXPRESS WARRANTY

70. ProCARE incorporates by reference the allegations contained in the previous paragraphs.

71. In its agreement with ProCARE, TIBCO made an affirmation or promise to furnish software products for ProCARE's use, as well as the expertise and coding necessary to implement and integrate TIBCO's software products with ProCARE's systems.

72. As part of the agreement, TIBCO warranted that its software "will operate in all material aspects in conformity with the functional specifications described in the Documentation," and, in the event that the software did not so perform, TIBCO would correct the error, provide a plan "reasonably acceptable to Customer to correct the Error," or if TIBCO failed in those respects, the agreement would be terminated and TIBCO would issue a refund of the fees paid.

73. ProCARE relied on this when deciding to enter the agreement with TIBCO.

74. As discussed herein, almost immediately—and within the first 90 days—TIBCO's software products failed to perform as promised, and ProCARE spent months waiting for TIBCO to successfully integrate and implement its software products. ProCARE provided TIBCO with notice of the failure of TIBCO's software to perform as promised on multiple occasions within the first 90 days of the parties' agreement.

75. When TIBCO failed, ProCARE sought termination of the agreement. TIBCO did not honor the terms of its express warranty, as it did not provide a plan to correct the errors that was "reasonably acceptable" to ProCARE, nor did TIBCO issue a refund of the fees ProCARE paid.

76. Because TIBCO's express warranty failed of its essential purpose, ProCARE is entitled to remedies as provided by California statute. CAL. COM. CODE § 2719(2). ProCARE asserts its right to all damages arising from TIBCO's breach of express warranty, including, but not limited to, incidental and consequential damages. CAL. COM. CODE §§ 2714-2715.

77. As a result of TIBCO's failure to comply with its express warranty, ProCARE suffered damages, including legal fees and expenses. ProCARE is therefore entitled to recovery of its damages and all costs permissible by law.

## COUNT THREE – INTENTIONAL MISREPRESENTATION

78. ProCARE incorporates by reference the allegations contained in the previous paragraphs.

79. During the negotiation process, TIBCO represented to ProCARE that TIBCO could successfully integrate and implement its software products with ProCARE's existing systems.

80. When it made those representations, TIBCO knew that they were false, because TIBCO's products were designed to be used with a different type of environment that is significantly different from, and incompatible with integration with, ProCARE's system.

81. TIBCO intended for ProCARE to rely on these statements in order to induce ProCARE to enter an agreement. ProCARE did, in fact, rely on TIBCO's representations in entering the agreement. That reliance was justifiable, as ProCARE would not have entered into the agreement absent TIBCO's representation that TIBCO's products would work with ProCARE's existing system.

82. As a result of these misrepresentations, ProCARE has suffered damages. ProCARE is therefore entitled to recovery of its damages.

## COUNT FOUR – NEGLIGENT MISREPRESENTATION

83. ProCARE incorporates by reference the allegations contained in the previous paragraphs.

84. During the negotiation process, TIBCO represented to ProCARE that TIBCO

could successfully integrate and implement its software products with ProCARE's existing systems.

85. When TIBCO made those representations, they were false. TIBCO had no reasonable grounds to believe they were true, as TIBCO's software products were designed to be used with a different type of environment that is significant different from, and incompatible with integration with, ProCARE's system.

86. TIBCO intended for ProCARE to rely on these statements in order to induce ProCARE to enter an agreement. ProCARE did, in fact, rely on TIBCO's representations in entering the agreement. That reliance was justifiable, as ProCARE would not have entered into the agreement absent TIBCO's representation that TIBCO's products would work with ProCARE's existing system.

87. As a result of these misrepresentations, ProCARE has suffered damages. ProCARE is therefore entitled to recovery of its damages.

## COUNT FIVE –

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

88. ProCARE incorporates by reference the allegations contained in the previous paragraphs.

89. ProCARE and TIBCO entered into an agreement, and ProCARE fulfilled its obligations under that agreement by tendering the agreed-upon payments.

90. Since TIBCO had received the agreed-upon payment from ProCARE, all conditions precedent to TIBCO's performance occurred.

91. TIBCO unfairly interfered with ProCARE's right to receive the benefits of the agreement, as it ultimately failed to assist ProCARE with properly integrating and implementing TIBCO's software products with ProCARE's systems. In doing so, TIBCO rendered fulfillment of the agreement impossible, and failed to do everything required of TIBCO to accomplish the agreement's purpose.

92. As a result of TIBCO's actions, ProCARE has suffered damages. ProCARE is

therefore entitled to recovery of its damages.

## PRAYER FOR RELIEF

WHEREFORE, ProCARE prays for judgment as follows:

(i) that TIBCO take nothing by its Complaint and the same be dismissed with prejudice;

(ii) that ProCARE be awarded the relief requested in its Counterclaims;

(iii) that ProCARE be awarded its costs of suit, including reasonable attorneys' fees and expenses to the extent allowable; and

(iv) that ProCARE be awarded any further relief to which it is entitled.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), ProCARE hereby demands a jury trial on all issues triable of right by jury.

Dated: July 31, 2020.                            Respectfully submitted,

By: */s/ Martin E. Rose*
Martin E. Rose (SBN: 62558)
Ben A. West [*Pro Hac Vice Forthcoming*]
**FROST BROWN TODD LLC**
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone: (214) 545-3472
Facsimile: (214) 545-3473
E-mail: mrose@fbtlaw.com
E-mail: bwest@fbtlaw.com

*Attorneys for Defendant/Counter-Plaintiff*
**PROCARE PORTAL, LLC**

0145275.0734189   4842-9468-2564v6

**DEFENDANT'S ORIGINAL ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**                **CASE NO. 3:20-CV-03897-LB**