United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TIBCO SOFTWARE INC., | Case No. 20-cv-03897-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS** |
| PROCARE PORTAL, LLC, | Re: ECF No. 16 |
| Defendant. | |

**INTRODUCTION**

In this lawsuit, the parties each claim that the other party breached their contract. Plaintiff TIBCO Software licensed its software products to defendant ProCARE Portal, which provides healthcare providers with a software platform to manage compensation. TIBCO sued ProCARE for breach of the contract after ProCARE terminated the contract and did not pay the full licensing fee. ProCARE counterclaimed for breach of contract (and related contract-based claims) and intentional and negligent misrepresentation, generally because TIBCO's products did not perform as promised. TIBCO moved to dismiss the misrepresentation claims for failure to plead the claims with particularity under Federal Rule of Civil Procedure 9(b). The court grants the motion.

ORDER – No. 20-cv-03897-LB

1

**STATEMENT**

2    The following sections summarize (1) the factual allegations in the complaint, (2) the factual

3    allegations in the counterclaim, and (3) the procedural history.

4

5    **1.   Complaint**

6    TIBCO is a software company that "provides integration, analytics, and event processing

7    software to companies," and it licenses its software and cloud services to its customers.[1] On March

8    2, 2017, TIBCO licensed its products to ProCARE, a company that provides a software platform

9    for healthcare providers to manage compensation for physicians (and others).[2] The agreement had

10   a three-year term (April 4, 2017 to April 3, 2020) for the following products: (1) TIBCO

11   Jaspersoft – Professional Edition; (2) TIBCO JasperReports Server – Professional Edition; (3)

12   TIBCO Jaspersoft – Visualize.js; (4) TIBCO Jaspersoft – Enterprise Edition; and (5) TIBCO

13   Jaspersoft Upshift Pack – Impulse Level.[3] The license was "limited, non-transferable,

14   nonsublicensable, [and] non-exclusive."[4] ProCARE "was further entitled to certain maintenance of

15   the TIBCO Software."[5] The agreement has the following terms:

16       Section 3. Financial terms

17       a) Customer shall pay Licensor any fees or payments net 30 days from Licensor's invoice.
         Licensor may charge Customer an additional 1.5% per month (or such lower amount as
18       required by applicable law) for all fees that are not paid on time.

19       . . .

20       Section 8. Warranties

21       a) Licensor warrants that for 90 days following the Delivery Date ("Warranty Period"), the
         Software, as updated and used in accordance with the Documentation, will operate in all

22

23
-----------------------------------
24   [1] Compl. – ECF No. 1 at 2 (¶ 5). Citations refer to material in the Electronic Case File ("ECF");
     pinpoint citations are to the ECF-generated page numbers at the top of documents.

25   [2] *Id*. (¶ 6); Counterclaims – ECF No. 13 at 7 (¶ 51).

26   [3] Compl. – ECF No. 1 at 2–3 (¶¶ 6–7); Order Form, Ex. B to Compl. – ECF No. 11 at 12–13. The
     court considers the order form and master agreement under the incorporation-by-reference doctrine.
     *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).

27   [4] Compl. – ECF No. 1 at 3 (¶ 9); Master Agreement, Ex. B to Compl. – ECF No. 11 at 2.

28   [5] Compl – ECF No. 1 at 3 (¶ 9).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8

material respects in conformity with the functional specifications described in the Documentation.

b) Licensor is not responsible for any claimed breach of any warranty caused by: (i) modifications made to the Licensor Software by anyone other than Licensor; (ii) the combination, operation or use of the Licensor Software with any items that are not permitted in the Documentation; (iii) Customer's failure to use any new or corrected versions of the Licensor Software made available by Licensor; (iv) Licensor's adherence to Customer's specifications or instructions; (v) Customer deviating from the Licensor Software operating procedures described in the Documentation; or (vi) errors caused by customizations. Consulting services to correct defects or issues subject to one of the above warranty exclusions may be procured by Licensee under a Work Order pursuant to Licensor's standard time and material charges.[6]

9   Either party may terminate the agreement "upon 30 days prior written notice if the other party

10 breaches a material provision of this Agreement and fails to cure such breach within the 30 day

11 notice period."[7] The termination of the agreement "does not (i) relieve Customer of its obligation

12 to pay all fees that have been accrued or are otherwise owed by Customer under this Agreement or

13 (ii) limit either party from pursuing other remedies available to it, including injunctive relief."[8]

14 "The parties' rights and obligations under this section [Term and Termination] and sections

15 entitled 'Financial Terms,' 'Ownership,' 'Confidentiality,' 'Warranties,' 'Indemnity,' 'Remedies,'

16 'Limitation of Liability,' 'General Provisions,' and those surviving provisions of the Exhibits

17 survive the termination of this Agreement and/or an Order Form."[9]

18   The contract required ProCARE to pay a total subscription fee of $124,020 for the three-year

19 term in the following installments: (1) $31,005 in year one (by quarterly payments of $7,751.25);

20 (2) $40,927 in year two (by quarterly payments of $10,231.75); and (3) $52,088 in year three.[10]

21   ProCARE downloaded and used the licensed software.[11] On September 7, 2017, ProCARE

22 emailed TIBCO saying that it used the TIBCO software but that it "did not work well with other

23

24
25
26
27
28

---

[6] Master Agreement, Ex. A to Compl. – ECF No. 11 at 3, 5.

[7] *Id*. at 6 (providing for two other methods of termination too).

[8] *Id*. at 7.

[9] *Id*.

[10] Order Form, Ex. B to Compl. – ECF No. 11 at 13; Compl. – ECF No. 1 at 3 (¶ 8).

[11] Compl. – ECF No. 1 at 3 (¶ 12).

1      software that ProCARE was using, and that they would not need the software licenses until a later

2      date."[12] ProCARE said that it would stop making payments until April 2019.[13] On October 10,

3      2017, ProCARE sent TIBCO a letter terminating the contract, and it stopped all payments to

4      TIBCO.[14] As of February 14, 2020, ProCARE owed a balance of $142,873.34, consisting of

5      $108,517.50 in unpaid fees and $34,355.84 in late fees.[15]

6

7      **2.  Counterclaim**

8          ProCARE counters generally that TIBCO misrepresented its products' capabilities.

9          ProCARE provides its customers, who are healthcare-provider organizations, with a platform

10     that allows an easy, efficient, and accurate way to "manage and process incentive compensation

11     for physicians and practice providers."[16] As part of its proprietary healthcare-informatics platform,

12     it requires certain "reporting and analytics features and functionality."[17]

13         At some point, ProCARE attended a TIBCO webinar, and afterwards, a TIBCO sales

14     representative contacted ProCARE and provided information about TIBCO products.[18] During

15     their negotiations, ProCARE told TIBCO that it needed software that could "successfully integrate

16     with ProCARE's existing systems, and that TIBCO must be able to successfully implement that

17     integration."[19] TIBCO assured ProCARE that its products would be able to integrate with

18     ProCARE's system and that "any necessary customization or coding to ensure the integration was

19     successful was within TIBCO's knowledge, expertise, and ability."[20] TIBCO also said that the

20     integration costs were "baked into" the total cost of the software. ProCARE "understood that the

21

22     [12] *Id*. (¶ 13).

23     [13] *Id*. at 4 (¶ 13).

       [14] *Id*. (¶¶ 14, 17).

24     [15] *Id*. (¶ 18).

25     [16] Counterclaims – ECF No. 13 at 7 (¶ 51).

26     [17] *Id*. (¶ 52).

       [18] *Id*.

27     [19] *Id*. at 7–8 (¶ 54).

28     [20] *Id*. at 8 (¶ 55).

ORDER – No. 20-cv-03897-LB                    4

1      total cost covered both TIBCO's software products and the successful implementation and

2      integration of those products with ProCARE's system."[21]

3           ProCARE eventually reached an agreement to license TIBCO software products that was

4      memorialized with the execution of an order form (filed as Exhibit B to the complaint) that has a

5      payment plan.[22] ProCARE began making payments under the agreement.[23]

6           Once TIBCO began integrating its software with ProCARE's platform, "it quickly became

7      evident that TIBCO's software products did not perform as promised." There were issues with the

8      out-of-the-box software download, customization, and integration with ProCARE's existing

9      systems.[24] TIBCO tried to fix the issues by customizing the products but ultimately was

10     unsuccessful.[25] In particular, ProCARE "made it clear that the requirement that TIBCO's software

11     produced functioning reports was critical and must be completed by June 2017." By September

12     2017, TIBCO was still unable to customize and integrate its software into ProCARE's system.[26]

13          ProCARE eventually realized that TIBCO's products were not intended for ProCARE's

14     system.[27] It told TIBCO that the software did not match with TIBCO's sales pitch and did not

15     work as promised. The problems included (1) the lack of quality and control over PDF output, (2)

16     the inability to link reports to detail outputs and cascading data, (3) the lack of drill-down

17     functionality, (4) the inability to set dynamic data formatting, (5) issues with grid sizing and

18     screen responsiveness, (6) the loss of control panel to make changes, and (7) the excessive need

19     for custom-embedded coding.[28]

20

21

22

---

23     [21] *Id.*

       [22] *Id.* (¶¶ 56–57).

24     [23] *Id.* (¶ 56).

25     [24] *Id.* (¶ 58).

       [25] *Id.* (¶ 59).

26     [26] *Id.*

27     [27] *Id.* (¶ 60).

28     [28] *Id.* at 8–9 (¶¶ 60–61).

ORDER – No. 20-cv-03897-LB                    5

United States District Court
Northern District of California

1    Because of TIBCO's inability to provide the services and implementations it promised,

2    ProCARE stopped making payments.[29] ProCARE "was forced to develop its own software

3    workaround solution, at significant time and expense."[30] This affected its go-to-market timelines,

4    critical deadlines, and overall development strategy.[31]

5

6    ### 3. Procedural History

7    On June 12, 2020, TIBCO filed its complaint, claiming that ProCARE breached the contract.[32]

8    On July 31, 2020, ProCARE answered the complaint and counterclaimed for (1) breach of

9    contract, (2) breach of express warranty, (3) intentional misrepresentation, (4) negligent

10   misrepresentation, and (5) breach of covenant of good faith and fair dealing.[33] The parties agree

11   that the court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are

12   diverse, and the amount in controversy exceeds $75,000.[34] On August 21, 2020, TIBCO moved to

13   dismiss ProCARE's third and fourth counterclaims on the ground that ProCARE did not plead the

14   claims with particularity under Rule 9(b).[35] The court held a hearing on October 1, 2020. All

15   parties consented to magistrate jurisdiction.[36]

16

17   **STANDARD OF REVIEW**

18   A complaint must contain a "short and plain statement of the claim showing that the pleader is

19   entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

20   which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

21   complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

22   

23   [29] *Id*. (¶ 63).

     [30] *Id*. (¶ 64).

24   [31] *Id*.

25   [32] Compl. – ECF No. 1 at 4–5 (¶¶ 19–26).

26   [33] Counterclaims – ECF No. 13 at 9–13 (¶¶ 65–92).

     [34] Compl. – ECF No. 1 at 2 (¶ 3); Counterclaims – ECF No. 13 at 7 (¶ 48).

27   [35] Mot. – ECF No. 16.

28   [36] Consents – ECF Nos. 8, 14.

United States District Court
Northern District of California

1    'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

2    recitation of the elements of a cause of action will not do. Factual allegations must be enough to

3    raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations

4    omitted).

5        To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which

6    when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

7    U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

8    the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9    defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a

10   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

11   unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

12   merely consistent with a defendant's liability, it stops short of the line between possibility and

13   plausibility of 'entitlement to relief.'" *Id*. (internal quotation marks omitted) (quoting *Twombly*,

14   550 U.S. at 557).

15       Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud . . .,

16   a party must state with particularity the circumstances constituting fraud . . . . Malice, intent,

17   knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

18   9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when,

19   where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106

20   (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule

21   9(b) is that defendants be given fair notice of the charges against them. *See, e.g., In re Lui*, 646 F.

22   App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough

23   to give defendants notice of the particular misconduct . . . so that they can defend against the

24   charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v.*

25   *Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the

26   defendant can prepare an adequate answer").

27

28

United States District Court
Northern District of California

ORDER – No. 20-cv-03897-LB                    7

United States District Court
Northern District of California

1    If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

2    possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th

3    Cir. 2017) (cleaned up).

4

5                                         **ANALYSIS**

6    The parties do not dispute that Rule 9(b)'s pleading standard applies here.[37] They dispute only

7    whether ProCARE has pleaded its intentional and negligent misrepresentation counterclaims with

8    particularity. It has not.

9    Under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: (1)

10   misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

11   (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting

12   damage." *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997) (cleaned up).

13   "Unlike fraud, a claim for negligent misrepresentation 'does not require knowledge of falsity, but

14   instead requires a misrepresentation of fact by a person who has no reasonable grounds for

15   believing it to be true." *Beard v. Int'l Bus. Mach. Corp.*, C-18-06783-WHA, 2019 WL 1516592, at

16   *2 (N.D. Cal. April 7, 2019) (quoting *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31

17   (2013)).

18   TIBCO argues that ProCARE does not allege the "who, what, when, where, and how" of the

19   alleged misrepresentations.[38] The counterclaims do not satisfy Rule 9(b)'s standard. ProCARE

20   alleges only that (1) an unidentified TIBCO sales representative reached out to ProCARE at some

21   point, (2) during negotiations, TIBCO assured ProCARE that the TIBCO products would work

22   with ProCARE's existing platform and that the integration cost was included in the total balance,

23   and (3) the products did not integrate with ProCARE's system as promised and had other

24   problems.[39] It does not identify the specific statements that TIBCO made, how those statements

25

26   _____

27   [37] Mot. – ECF No. 16 at 4; Opp'n – ECF No. 18 at 3.

     [38] Mot. – ECF No. 16 at 5.

28   [39] Counterclaims – ECF No. 13 at 7 (¶ 52), 8 (¶ 55), 8–9 (¶ 61).

1    were false, who made those statements, or when and where those statements were made. This is

2    insufficient under Rule 9(b). *See, e.g.*, *Beard*, 2019 WL 1516592 at \*5 (the plaintiff did not plead

3    fraudulent misrepresentation with the requisite particularity where "the complaint lacks allegations

4    regarding the time, place and specific content of the false representations as well as the identities

5    of the parties to the misrepresentations") (cleaned up); *Grouse River Outfitters Ltd. v. Netsuite,*

6    *Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273, at \*10 (N.D. Cal. Oct. 12, 2016) (complaint did not

7    plead fraud under Rule 9(b) standards where the "fact allegations are about deficiencies in the

8    product" and "[t]he global representation that can be discerned is only [that] 'the product did not

9    work as promised'"); *id.*, 2016 WL 11690253, at \*3 (N.D. Cal. Dec. 15, 2016) (amended

10   complaint sufficiently pleaded fraud claims in part because it "specifies when [the alleged

11   misrepresentation] was made, what was said, and how it was false").

12       Accordingly, the court dismisses ProCARE's third and fourth counterclaims for failure to

13   plead the claims with particularity under Rule 9(b).

14

15                              **CONCLUSION**

16       The court grants TIBCO's motion with leave to amend. ProCARE must amend its

17   counterclaims within 45 days after the parties' mediation absent stipulation of the parties or further

18   order of the court.

19       This disposes of ECF No. 16.

20       **IT IS SO ORDERED.**

21       Dated: October 1, 2020        _____

22                                     LAUREL BEELER
                                       United States Magistrate Judge
23

24

25

26

27

28

United States District Court
Northern District of California